**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **2:09-cr-325** |
| **v.** | ) | **2:14-cv-1422** |
| | ) | |
| **FRANCO BADINI,** | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Pending before the Court is the MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (ECF No. 977), filed by Franco Badini. Badini also filed a MOTION FOR COUNSEL AND DISCOVERY (ECF No. 978). The government has filed a response in opposition to the motions (ECF No. 982). Accordingly, they are ripe for disposition. For the reasons that follow, the motions will be denied, and no certificate of appealability will be issued.[1]

## I.     Background

On March 30, 2010, a grand jury returned a nine-count superseding indictment against Badini and 15 co-defendants alleging that they were involved in a wide-ranging cocaine conspiracy in the Pittsburgh area. Badini was charged in Count One with conspiracy to distribute

---

1.     A district court has the authority to dismiss a motion to vacate without holding an evidentiary hearing when it is clear from both the motion and the record that the movant is not entitled to relief. See 28 U.S.C. § 2255(b); Rule 4(b) of the Rules Governing § 2255 Proceedings. As more fully explained herein, Badini has not demonstrated a prima facie entitlement to relief. Accordingly, the Court will resolve this motion without a hearing. Likewise, while Rule 8 of the Rules Governing Proceedings under 28 U.S.C. § 2255 requires the appointment of counsel where an evidentiary hearing is warranted, *United States v. Bendolph*, 409 F.3d 155 (3d Cir.2005), the decision to appoint counsel in a § 2255 proceeding otherwise is left to the discretion of the court, 18 U.S.C. § 3006A(a)(2)(B) ("Whenever . . . the court determines that the interests of justice so require, representation may be provided" in a § 2255 proceeding.) (emphasis added). None of the grounds for relief alleged by Badini have merit. Thus, the interests of justice do not weigh in favor of appointing counsel.

and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Approximately one week before trial, the government filed a § 851 information, in which it was alleged that Badini was convicted of possession with intent to deliver a controlled substance on or about April 18, 1994, in the Allegheny County Court of Common Pleas. The § 851 enhancement subjected Badini to a mandatory minimum sentence of 20 years. Following a week-long jury trial in August 2011, Badini was found guilty as to Count One.

Prior to sentencing, Badini filed a motion, arguing that the government's plea bargaining tactics – specifically its decision to file the § 851 information after unsuccessful plea negotiations – violated the Sixth Amendment and the due process guarantee of the United States Constitution. As relief, Badini asked this Court to vacate his conviction or, alternatively, to strike the § 851 Information. The Court denied Badini's motion, finding that his attempts to attack the § 851 information and the government's use of it as a bargaining chip in negotiations were without merit. The Court, therefore, proceeded to sentence Badini to the 20-year mandatory minimum sentence.

Badini took a direct appeal to the Third Circuit Court of Appeals. On May 23, 2013, the Court of Appeals issued a non-precedential opinion affirming his conviction and sentence. *See United States v. Badini*, 525 F. App'x 190 (3d Cir. 2013) *cert. denied*, 134 S. Ct. 703 (2013). After Badini's petition for a writ of certiorari was denied by the Supreme Court, he timely filed this motion.

## II.     Discussion

Badini raises several grounds for relief in his motion. First, he alleges that, for a litany of reasons, he received ineffective assistance of counsel. Second, he alleges that the Assistant United States Attorney ("AUSA") assigned to this case engaged in prosecutorial misconduct.

Third, he alleges that the § 851 information is unconstitutional as applied to him. Fourth, he claims that this Court erred in admitting evidence under Rule 404(b) without performing the required balancing test under Rule 403.

### A. Ground 1 – Ineffective Assistance of Counsel

To establish a claim for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant "must show that (1) his or her attorney's performance was, under all the circumstances, unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a 'reasonable probability that, but for counsel's unprofessional errors, the result would have been different[.]'" *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) (quoting *Strickland*, 466 U.S. at 694). In other words, "a defendant must show both unprofessional conduct and, in most cases, prejudice as a result." *Id.*

Badini argues that his trial counsel, Lee Rothman, was ineffective for (1) failing to suppress inadmissible wiretap evidence, (2) failing to request a *Starks* hearing to contest the authenticity and accuracy of the wiretap recordings and transcripts, (3) failing to properly object to the government's use of the § 851 enhancement, (4) failing to object to alleged witness vouching during the AUSA's closing argument, (5) performing under a conflict of interest, and (6) failing to request a buyer-seller instruction. These allegations will be addressed *seriatim*.

### 1. Failure to Suppress Wiretap Evidence

First, Badini alleges that certain wiretap recordings were not properly sealed as required by 18 U.S.C. § 2518(8)(a)[2] and, in turn, that counsel was ineffective for failing to move to

---

2. 18 U.S.C. § 2518(a) requires the court to seal wiretap recordings "[i]mmediately upon the expiration of the period of the order," so as to "protect the recording from editing or other alterations." If the government fails to comply with the statutory sealing requirements, the recordings must be excluded unless the government provides a "satisfactory explanation for the absence [of the seal]." *Id.*

suppress on that basis.[3] Badini has not offered any factual support for his allegations that the wiretap orders were not timely sealed or for his broader allegation that the government somehow improperly manipulated the copies of the recordings played at trial. Thus, the Court finds that Badini cannot establish that his counsel was ineffective for failing to raise this issue in his motion to suppress.

### 2. Failure to Request *Starks* Hearing

Badini's second claim dovetails with his first. More specifically, he alleges that he "repeatedly asked" his counsel "to contest that authenticity of the wiretaps" through a *Starks* hearing, but his counsel refused to do so. In support of his claim that the recordings were not authentic, Badini points to what he perceives as a discrepancy between the "[t]rial transcripts of a conversation between [him] and Curran" on September 30, 2009, and "the transcripts from the discovery." Def.'s Mot. at 4, ECF No. 977. As the government argues, however, there was no basis to seek a *Starks* hearing and challenge the authenticity of the recordings, and Badini's after-the-fact attempt to muster such a basis is totally misguided. Contrary to his argument, there is no actual discrepancy between the "trial transcripts" and the "transcripts from the discovery." The transcripts Badini relies on relate to two entirely separate calls; whoever was transcribing the calls simply failed to change the header and call number. This minor error in transcription hardly suggests that the recordings that were admitted into evidence at trial were not authentic. This claim is, therefore, rejected.

### 3. Failure to Object to Government's Use of § 851 Enhancement

Next, Badini alleges that his counsel was ineffective for failing to raise certain objections

---

3.     The Court notes that Badini's counsel did, in fact, file a motion to suppress the wiretap evidence in this case, arguing, principally, that the government had failed to establish the necessity of resorting to a wiretap. ECF No. 496. The Court denied this motion. ECF No. 589.

to the § 851 enhancement. To wit, he argues that the § 851 information failed to establish that he was convicted of a felony, that the information contained clerical errors, and that the conviction was obtained in violation of his right to counsel. None of these contentions withstand scrutiny.

As to his first contention, the information states that Badini was convicted "on or about April 18, 1994, at Criminal Case Number 93-15625" of Possession with Intent to Deliver a Controlled Substance in violation of 35 P.S. § 780-113(a)(30). This is a "felony drug offense" within the meaning of the Controlled Substances Act, 21 U.S.C. § 802(44), as it is punishable by imprisonment for more than one year. *See* 35 P.S. § 780-113(f) (detailing the possible sentences for violations of 35 P.S. § 780-113(a)(30) that involve cocaine, all of which authorize imprisonment for more than one year). It is immaterial that Badini was actually sentenced to probation. *See United States v. Garcia*, No. CRIM.A. 04-662-1, 2012 WL 72756, at *2 (E.D. Pa. Jan. 10, 2012) ("Under § 851, Garcia's prior state conviction was properly considered a prior felony drug offense. It is irrelevant that he only served a sentence of five years' probation."). Moreover, contrary to Badini's suggestion that the "information itself was insufficient to prove a felony conviction," it is clear that the government was not required to introduce anything more than the certified copy of the judgment of conviction in order to meet its burden. *United States v. Kaplan*, 526 F. App'x 208, 217 (3d Cir. 2013) (citing *United States v. Howard*, 599 F.3d 269, 271 (3d Cir. 2010)).

Badini fares no better with his second argument. He claims that he was not convicted on or about April 18, 1994, as is alleged in the § 851 information. Instead, he claims, he was originally scheduled to plead guilty on April 18, but the hearing did not actually occur until May 18, 1994. This is factually incorrect, though. The judgment of conviction indicates that Badini entered a guilty plea on April 18, but his sentencing was postponed until May 18. Consequently,

there was no error in the § 851 information, and any challenge raised by Badini's counsel in this regard would have been futile.[4]

The Court is similarly unconvinced by Badini's claim that his right to counsel was violated in the state-court preliminary hearing related to his 1994 conviction. At the outset, the Court notes that there is some doubt as to whether Badini's challenge to his prior conviction is even cognizable at this point, seeing as the conviction occurred more than 20 years ago. Under 21 U.S.C. § 851(e), a defendant is given a five-year window within which to collaterally challenge a prior conviction that the government seeks to use for a sentencing enhancement. Courts have reached different conclusions as to whether this statutory bar applies whenever a defendant attempts to attack his prior conviction on the basis that his right to counsel was violated. *Compare United States v. Mason*, 628 F.3d 123, 133 (4th Cir. 2010) (explaining that the defendant's challenge to use of prior convictions based on allegations that they were uncounseled was "likely barred by the statute of limitations in 21 U.S.C. § 851(e)," because those convictions "occurred more than five years before the government submitted its § 851 information in this case") *with United States v. Ramon-Rodriguez*, 492 F.3d 930, 939 (8th Cir. 2007) (citing *Custis v. United States*, 511 U.S. 485, 494–96 (1994)) ("This five-year limitation, however, does not apply to claims that a defendant's predicate conviction occurred in violation of the defendant's right to counsel.").

At any rate, assuming that the challenge can be raised in this venue, the Court concludes that it has no merit. As documents Badini, himself has attached to his motion reveal, Badini waived his right to counsel at the state-court preliminary hearing. *See* Def.'s Ex. 1 at 19, ECF

---

4.    Badini also argues, in passing, that he was not served with a copy of the § 851 information prior to trial. The Court does not credit this conclusory allegation, however, as it is expressly contradicted by the information attached to the government's response to Badini's motion, establishing that he was in fact properly served.

No. 977-1; Gov't Ex. 2 at 2, ECF No. 982-2. Final criminal judgments are afforded a presumption of regularity, so the burden of proof to establish the unconstitutionality of the prior conviction rests with the defendant. *Parke v. Raley*, 506 U.S. 20, 31 (1992) (citing *Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938)). Here, there are no facts alleged that could possibly support Badini's claim that his waiver was not knowing and voluntary. As a result, counsel was not ineffective for declining to raise this issue prior to Badini's sentencing.

### 4. Failure to Object to Alleged Witness Vouching

Badini alleges that his counsel should have objected when the AUSA allegedly vouched for government witnesses Omer Dugalic, Shane Hennan, and Michael Lucerne. "Vouching constitutes an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998) (citations omitted). Conversely, "where a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury [of] the credibility of the witness based on his own personal knowledge, the prosecution is engaging in proper argument and is not vouching." *Id.* at 187 (citing *United States v. Pungitore*, 910 F.2d 1084, 1125 (3d Cir. 1980)). Judged against that standard, the portions of the AUSA's closing argument that Badini cites did not cross the line into improper vouching. *See, e.g.*, *id.* at 188 ("The comment by the AUSA consists first of the rhetorical question, 'What motivation [would these witnesses have to lie]?' *This question is not vouching.*") (emphasis added); *United States v. Bernal-Benitez*, 594 F.3d 1303, 1314 (11th Cir. 2010) ("Merely acknowledging that adverse legal consequences would flow from lying under oath is a far cry from placing the prestige of the government behind a witness."). Thus, this claim must be rejected.

### 5. Alleged Conflict of Interest

Badini's fifth claim is that his counsel acted under a conflict of interest because he represented an "un-indicted co-conspirator," Donald Amman, who was a friend of several co-defendants, including David Curran and Michael Luzerne, in a state-court marijuana case pending at the time of trial in this case. This alleged conflict, Badini alleges, precluded his counsel from being "able to cross examine Michael Lucerne thoroughly about Lucerne's, Curran's and Amman's relationship with each other and others" since "[a]ny questions regarding Lucerne, Curran, and Amman would have had potential incriminating consequences for Mr. Rothman's client." Def.'s Mot. at 10, ECF No. 977.

"The Sixth Amendment guarantee of effective assistance of counsel includes two correlative rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988) (citing *Gov't of Virgin Islands v. Zepp*, 748 F.2d 125, 131 (3d Cir. 1984)). To establish a conflict of interest in violation of the Sixth Amendment, a defendant must prove (1) multiple representation (2) caused "an actual conflict of interest" (3) that "adversely affected" counsel's performance. *Id.* (citations omitted). If this showing is made, a defendant need not establish prejudice within the meaning of *Strickland*. *See id.* (citations omitted).

"[A]n actual conflict is more likely to occur in cases of joint representation – representation of more than one defendant at the same trial – rather than simply multiple representation – representation of defendants in different trials – as occurred here." *United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999). "In cases involving multiple but not joint

representation, and when an attorney has in some way failed to act," a defendant must establish "'two elements.'" *Id.* (quoting *Gambino*, 864 F.2d at 1070). "'First, he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued.'" *Id.* (quoting *Gambino*, 864 F.2d at 1070). "'Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Id.* (quoting *Gambino*, 864 F.2d at 1070).

Applying these principles here, the Court finds that Badini has not established establish that his counsel was laboring under an "actual conflict" of interest. It is not enough for Badini to baldly allege that counsel could not "thoroughly" cross-examine Lucerne because of his relationship with Amman. Rather, he had to allege facts tending to show that counsel failed to pursue a plausible strategy or tactic because his loyalties were divided. That he has not done. Nor, would it seem, could he. At trial, Badini's counsel cross-examined Lucerne at length about, among other things, his relationship with Curran, his cooperation with the government and hope for a lessened sentence, his criminal history, and his relationship with Badini to attempt to show bias and motive to lie. It is not clear what questioning Lucerne regarding Amman would have accomplished or what Lucerne – or anyone else – would have said about Amman that could have incriminated Amman in his state-court case. In view of this, Badini's conflict of interest claim must be rejected.

### 6. Failure to Request Buyer/Seller Instruction

Badini argues that his counsel should have asked the Court to instruct the jury that buyer/seller relationship is not sufficient to establish involvement in a conspiracy. By way of background, at the end of the trial, the AUSA suggested at side bar that a buyer-seller instruction should be given to the jury, in light of certain arguments raised in defense counsel's closing

argument. Trial Tr. at 108:18-22, ECF No. 808. Badini's counsel responded that he did not

"believe that it's necessary for any further instructions to be read [to the jury]." *Id.* at 109:4-8.

The Court agreed and denied the government's request. *Id.* at 109:9. Badini now faults his

counsel for concurring in that decision.

Badini's argument lacks merit. The Court adequately instructed the jury on the law of

conspiracy. Its instructions made clear that a finding of a mere buyer-seller relationship would

not have been enough to convict, and a buyer-seller instruction would have been superfluous.

*United States v. Lewis*, 447 F. App'x 310, 315 (3d Cir. 2011) (quoting *United States v. Mata*, 491

F.3d 237, 241 (5th Cir. 2007)) ("'[A]n adequate instruction on the law of conspiracy precludes

the necessity of giving a buyer-seller instruction . . . '"). Therefore, Badini cannot establish that

he suffered any prejudice prejudice from his counsel's failure to request – or concur in the

government's request for – this instruction. *See United States v. Cale*, 107 F.3d 22 (10th Cir.

1997) (finding that defendant "was not prejudiced by his counsel's failure to request a buyer-

seller instruction because the instructions given by the court addressed the substance of such an

instruction").

### 7.      Failure to Object to Drug Quantity and Criminal History

Badini's last ineffective assistance claim is that counsel failed to object to the drug

quantity attributed to him in the presentence investigation report. Because of the filing of the §

851 enhancement, however, Badini's sentence was not driven by the drug quantity finding.

Rather, it was dictated by the statutory mandatory minimum. Therefore, even assuming that

counsel could have raised a meritorious objection, Badini cannot establish that he suffered any

prejudice from that failure, and this claim must be rejected.[5]

---

5.      Badini also asks the Court to reduce his criminal history category from III to II since, in

## B.     Ground 2 – Prosecutorial Misconduct

As his second asserted ground for relief, Badini alleges that the government violated its

obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S.

150 (1972) by withholding "favorable or exculpatory evidence" – namely, passport and/or flight

records from Halil Batlak.[6] According to Badini, these records would have established that

Batlak was actually in Bosnia during the month of July 2009, such that he could not actually

have delivered cocaine to Curran in Pittsburgh as certain government witnesses testified at trial.

Because Badini did not raise his *Brady* and *Giglio* claims on direct appeal, they have

been procedurally defaulted.[7] *See Massaro v. United States*, 538 U.S. 500, 504 (2003)

(explaining that "claims not raised on direct appeal may not be raised on collateral review . . .").

"A procedural default will bar review under § 2255 unless a defendant can establish cause for the

waiver of procedural default and can show 'actual prejudice' resulting from the alleged

violation." *Oelsner v. United States*, 60 F. App'x 412, 418 (3d Cir. 2003). "It has been observed

---

his view, he was erroneously assigned a criminal history point for an offense for which he received a sentence of probation. As the government notes, it is not clear to which offense Badini is referring. It appears, though, that he is arguing that the 2008 conviction for unlawfully possessing Vicodins should not have been counted. The Court agrees with the government that this argument is baseless. First, this offense was properly counted, and second, even if it is excluded, his criminal history category would still be III and not II, as Badini argues.

6.       Batlak's passport and/or flight records are the subject of his motion for discovery. According to his motion, he attempted to obtain these records through a Freedom of Information Act request but was, unsurprisingly, denied. His request for discovery will also be denied, as, it is clear from the government's filings that it does not possess the records Badini seeks.

7.       Although the government does not raise Badini's procedural default as a defense, the Court may consider this issue *sua sponte*. *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002) (explaining that a district court has "the discretion to raise [procedural default] *sua sponte*" but it might abuse its discretion in doing so if it is clear a miscarriage of justice occurred). Ultimately, though, it is immaterial whether the Court analyzes Badini's claim under the procedural default analysis or looks to the merits of his claim, as there is substantial overlap in these inquiries. *See Oelsner*, 60 F. App'x at 418 (citing *Banks*, 540 U.S. at 691).

that the cause and prejudice analysis in a habeas case based on *Brady* parallels two of the three components of the underlying alleged *Brady* violation." *Id.* (citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004)).

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. In *Giglio*, *Brady*'s holding was extended to include impeachment evidence. *United States v. Risha*, 445 F.3d 298, 299 (3d Cir. 2006). Moreover, the Supreme Court has firmly established that "the prosecution has an affirmative 'duty to disclose such evidence . . . even though there has been no request [for the evidence] by the accused.'" *Johnson v. Folino*, 705 F.3d 117, 128 (3d Cir. 2013) (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)). "However, even when the prosecution has failed to disclose favorable evidence to the defense, a constitutional violation is not inevitable." *Id.* A new trial is only warranted if the defendant proves that (1) the evidence is favorable, either because it was exculpatory or has impeachment value, (2) the evidence was suppressed and (3) the evidence is material. *Id.* (citing *Strickler v.* Greene, 527 U.S. 263, 281-82 (1999)). As noted, "'cause and prejudice,' which excuse procedural default, mirror the last two elements of a *Brady* violation." *Johnson*, 705 F.3d at 128. "This is because in the specific context of a *Brady* claim, 'a petitioner shows "cause" when the reason for his [default] . . . was the State's suppression of the relevant evidence.'" *Id.* (quoting *Banks*, 540 U.S. at 691). Furthermore, prejudice for purposes of excusing procedural default "'exists when the suppressed evidence is "material" for Brady purposes.'" *Id.* (quoting *Banks*, 540 U.S. at 691).

In this case, the allegedly withheld evidence − Batlak's passport and/or flight records − presumably would be favorable to Badini, as the records might be able to bolster − or at least

clarify – Batlak's testimony about when he made his last trip to Pittsburgh and when he was in Bosnia in 2009.[8] While the first requirement of *Brady* may, therefore, be met, the same cannot be said of the second requirement. It is well settled that "[w]here the prosecutor had no actual or constructive possession of information, there can be no *Brady* violation for failure to disclose it." *Hollman v. Wilson*, 158 F.3d 177, 180 (3d Cir. 1998). Constructive possession in this context means that "although a prosecutor has no actual knowledge, he should nevertheless have known that the material at issue was in existence." *United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993). In other words, as the Court of Appeals has explained, "'possession' in the *Brady* context extends to material not within the prosecutor's actual knowledge or possession, provided that the evidence is either (a) known to some other 'arm of the state,' or (b) 'known to . . . others acting on the government's behalf in the case . . . .'" *Strohl v. Grace*, 354 F. App'x 650, 654 (3d Cir. 2009) (quoting *United States v. Perdomo*, 929 F.2d 967, 971 (3d Cir. 1991); *United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008)). At the same time, prosecutors are not obligated "'to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue.'" *United States v. Merlino*, 349 F.3d 144, 154 (3d Cir. 2003) (quoting *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996)).

Badini has not alleged that the AUSA either actually or constructively possessed Batlak's passport and/or flight records. And indeed, as the afore-cited cases make clear, the government was under no affirmative duty to discover these records and then disclose them to Badini. Accordingly, since Badini cannot establish an underlying *Brady* violation, he also cannot establish "cause and prejudice" for the purposes of excusing his procedural default of this claim.

---

8.     As the government observes, Batlak initially testified that he had driven to Pittsburgh to see Curran in March, April, and May 2009. Tr. of Testimony of Halil Batlak 130:13, ECF No. 982-8. When asked whether he was in Pittsburgh over the summer of 2009, however, he testified that he was "not certain which month it was; I'm not certain." *Id.* at 130:14-15.

It must be dismissed on that basis.

C.      **Ground 3 – Challenges to the § 851 Information**

Defendant makes several arguments with regard to the government's filing of the § 851 information. His principal arguments on this point – namely, that his prior conviction was the product of a *Gideon* violation and that it was not a felony offense – have been addressed *supra* and determined to be without merit. The Court reaches that same conclusion as to his remaining contentions.

Badini first contends that under *Alleyne v. United States*, --- U.S. ----, 133 S. Ct. 2151 (2013), a jury, and not the Court, was required to find that he had a prior felony drug conviction, as alleged in the § 851 information, in order to subject him to an increased mandatory minimum sentence. The Third Circuit Court of Appeals has twice made clear, however, that the *Alleyne* Court did not announce a new rule of law that applies retroactively to cases on collateral review, such as Badini's. *See United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014); *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014). Even if *Alleyne* were applicable in this setting, the result here would be the same. "Stated simply, *Alleyne* does nothing to alter the rule that, for sentencing enhancement purposes, the fact of a prior conviction need not be submitted to a jury." *Shaw v. United States*, No. 10-204, 2014 WL 2719661, at *3 (M.D. Pa. June 13, 2014) (citing *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); *United States v. Wright*, No. 05– 619–1, 2013 WL 5707876, at *4 n.22 (E.D. Pa. Oct. 18, 2013)); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998).

Badini also contends that the Supreme Court's decision in *Descamps v. United States*, --- U.S. ----, 133 S. Ct. 2267 (2013) limited the Court's authority to look beyond the fact of a prior conviction when applying the § 851 enhancement. In *Descamps*, the Supreme Court addressed

how to evaluate certain prior convictions under the Armed Career Criminal Act. It is an open question whether *Descamps* is retroactively applicable to cases on collateral review. *See United States v. Wilson*, No. 06–0097, 2014 WL 3339632, at *2 (W.D. Pa. July 8, 2014) (citations omitted). Assuming, *arguendo*, that *Descamps'* holding is retroactive, it would still provide no comfort for Badini. It cannot be argued that Badini's prior conviction was not a "felony drug offense," and thus the holding in *Descamps* is entirely inapplicable in this case.

### D. Ground 4 – Violation of Rule 404(b)

Finally, Badini argues that this Court erred in admitting evidence under Rule 404(b) without first conducting a Rule 403 balancing test. Badini raised this same argument on direct appeal, and it was soundly rejected. *Badini*, 525 F. App'x at 194 ("Badini's principal argument on appeal [was] that the District Court never performed the Rule 403 balancing as required by the third prong of our Rule 404(b) test."). He is, thus, precluded from relitigating this issue in his § 2255 motion, *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993), unless there has been an "intervening change in law" affecting the claim previously decided against him, *Sonneberg v. United States*, No. 01-2067, 2003 WL 1798982 (3d Cir. Apr. 4, 2003) (citing *Davis v. United States*, 417 U.S. 333 (1974)). Seeking to come within that exception, Badini asks the Court to "reconsider this issue" in light of the Third Circuit's decision in *United States v. Smith*, 725 F.3d 340 (3d Cir. 2013), which was decided some three months after his appeal. According to Badini, the *Smith* Court "reversed and remanded the case citing the same issue and caselaw as Petitioner did on direct appeal." Def.'s Mot. at 15, ECF No. 977.

True enough – but that does not mean that *Smith* marks a change in the law, thereby opening the door for Badini's challenge. In *Smith*, the Court of Appeals held that the district court's decision warranted reversal because its Rule 403 finding was not "apparent from the

record." 725 F.3d at 348. The Court of Appeals did not, however, purport to overturn its prior cases establishing that the district court's failure to conduct a Rule 403 balancing on the record is not necessarily fatal, including the case upon which it relied in affirming Badini's conviction, as the Court of Appeals can, if it so chooses, review the record and conduct the weighing itself. *See, e.g.*, *Badini*, 525 F. App'x at 194 (discussing *United States v. Sriyuth*, 98 F.3d 739 (3d Cir. 1996)). Accordingly, this claim is rejected.

## III.    Conclusion

For the reasons hereinabove stated, Badini's MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (ECF No. 977) and his MOTION FOR COUNSEL AND DISCOVERY (ECF No. 978) will be **DENIED**. Moreover, Civil Action 2:14-cv-1422 will be docketed as **CLOSED**. The remaining issue before the Court is whether a certificate of appealability should issue. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That is, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This Court finds that, for all of the foregoing reasons, Badini has failed to make such a showing. Thus, a certificate of appealability will not be issued. An appropriate order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **2:09-cr-325** |
| **v.** | ) | **2:14-cv-1422** |
| | ) | |
| **FRANCO BADINI,** | ) | |
| **Defendant.** | ) | |
| | ) | |

**ORDER OF COURT**

**AND NOW**, this 13th day of January, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (ECF No. 977) and the MOTION FOR COUNSEL AND DISCOVERY (ECF No. 978) are **DENIED**, and no certificate of appealability will be issued because Badini has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). It is **FURTHER ORDERED** that Civil Action 2:14-cv-1422 shall be docketed as **CLOSED**.

BY THE COURT:

s/ Terrence F. McVerry
Senior United States District Court Judge

cc:    Craig W. Haller, AUSA
       Email: craig.haller@usdoj.gov

       Franco Badini, #31374068
       Low Security Correctional Institute Allenwood
       P.O. Box 1000
       White Deer, PA 17887
       *Pro se*